**CITY AND COUNTY OF DENVER, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF the STATE OF COLORADO and Mary P. Ross, Respondents.**

No. 84CA0930.

Colorado Court of Appeals, Div. II.

March 14, 1985.

Rehearing Denied April 11, 1985.

Certiorari Granted Oct. 21, 1985.

Stephen H. Kaplan, City Atty., Dianne E. Eret, Asst. City Atty., Denver, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Christa D. Taylor, Asst. Atty. Gen., Denver, for respondents.

VAN CISE, Judge.

In this unemployment compensation case, the City and County of Denver (Denver) seeks review of an order of the Industrial Commission granting a full award of benefits to Mary P. Ross (claimant) based on an interpretation that certain payments received by claimant from Denver were wages and not disability payments. We reverse.

The facts of this case are not in dispute. On March 29, 1981, claimant, a Denver police officer, was seriously injured in an automobile accident in the course of her employment. Pursuant to Denver City Charter § C5.41-1 relating to police officers who are injured in line of duty, for a year following the accident claimant was paid by Denver an amount equal to her full salary. During that year, claimant was carried as assigned to a police medical unit, but she rendered no services. These payments terminated as of March 29, 1982. From April through August 1982, claimant received workmen's compensation payments.

In September 1982, claimant applied for unemployment compensation. It is undisputed that the base period for her claim was April 1981 through March 1982. Section 8–70–103(1), C.R.S. Denver disputed her eligibility.

The dispositive issue was whether the payments claimant had received from Denver by virtue of the charter provision during the base period were "wages" or "accident disability" benefits. If they were "wages," she was eligible for unemployment benefits under § 8–73–107(1)(e), C.R.S. If they were "accident disability" payments, the amount of these payments had to be excluded from "wages" as defined in § 8–70–103(22), C.R.S., and, without those payments being included, she had not received sufficient "wages" during the base period to meet the eligibility requirements. The Commission determined that the payments were "wages," and ordered a full award of unemployment benefits commencing as of October 2, 1982.

■ The same issue is presented in this review—whether the payments made to claimant during the year after the accident were "wages" or "accident disability" benefits. Since there is no factual dispute involved, resolution of that issue is one of law, and this court is not bound by the conclusions on that issue made by the Commission. *Dorsch v. Industrial Commission*, 185 Colo. 219, 523 P.2d 458 (1974); *Brush Hay & Milling Co. v. Small*, 154 Colo. 11, 388 P.2d 84 (1963).

The Employment Security Act provides a clear definition of "wages" and a clear exception. "Wages" is defined by § 8–70–103(22)(a), C.R.S., as "all remuneration for personal services." Section 8–70–103(22)(b)(I), C.R.S., provides that for purposes of determining monetary eligibility, the term "wages" shall not include "[t]he amount of any payment made to ... an employee under a plan or system established by an employer which makes provision for ... classes of his employees ... on account of ... sickness or *accident disability.*" (emphasis supplied)

■ Denver City Charter § C5.41-1 states that:

"[a]ny member of the Denver police department in the classified service, who shall become so physically ... *disabled by reason of bodily injuries* received in the discharge of the duties of said member in said department that he is rendered *unable to perform his duties* in said department, shall be granted any necessary leave or leaves of absence not to exceed one year at his full salary for the rank which he holds in said department, and shall be compensated from the regular police department payroll." (emphasis supplied)

It provides a system for payment to a police officer for "accident disability" as specified in § 8–70–103(22)(b)(I), C.R.S. The officer is not remunerated for personal services; the payments are made because of the officer's inability to perform services because of bodily injuries received—"accident disability." The term "full salary" as used in the charter section is merely a

measurement of the amount of compensation a disabled officer is to receive. *See Industrial Commission v. Sirokman*, 134 Colo. 481, 306 P.2d 669 (1957).

Since the payments to claimant pursuant to the charter provision were made under a plan or system established by Denver, her employer, which provides for police officers on account of "accident disability," the amount of these payments cannot be counted as "wages" for determining monetary eligibility for unemployment benefits under § 8–73–107(1)(e), C.R.S. (1984 Cum.Supp.). Inasmuch as her "wages" during the base period, exclusive of the C5.41–1 payments, were insufficient to meet the eligibility requirements, she is not entitled to unemployment benefits.

The order of the Commission is set aside, and the cause is remanded for the entry of a new order denying claimant's application for unemployment compensation and either requiring repayment of the amount of benefits paid to her pursuant to previous orders of the Division and of the Commission or waiving repayment on a determination by the Division that repayment would be inequitable. *See* § 8–81–101(4)(a)(I), C.R.S. (1984 Cum.Supp.).

KELLY, J., concurs.

BERMAN, J., dissents.

BERMAN, Judge, dissenting.

I disagree with the majority's ruling that the payments made to claimant during the year after her accident were "disability benefits," and therefore, I dissent.

I do not agree with the majority's conclusion that the issue of whether the payments made to the claimant were "wages" or "disability benefits" is a question of law. Here, there was conflicting evidence as to whether the payments were wages or disability benefits. Thus, the issue was one of fact. *See Rahder v. Industrial Commission*, 105 Colo. 594, 100 P.2d 1043 (1940).

The referee made a factual determination based on the evidence that the money paid to claimant was salary and not disability compensation. Upon review, the Industrial Commission affirmed and adopted the referee's findings of fact. Hence, if there is substantial evidence in the record to justify the Commission's findings and conclusions, we should not disturb its determination on appeal. *Olsgard v. Industrial Commission*, 190 Colo. 472, 548 P.2d 910 (1976).

In the instant case, I believe there is substantial evidence that the payments made to claimant following her accident were wages, and therefore, I would not disturb the Commission's findings.

The Denver City Charter § C5.41–1 provides:

"Any member of the Denver police department in the classified service, who shall become so physically or mentally disabled by reason of bodily injuries received in the discharge of the duties of said member in said department that he is rendered unable to perform his duties in said department, shall be granted any necessary leave or leaves of absence not to exceed one year *at his full salary* for the rank which he holds in said department, *and shall be compensated from the regular police department payroll.*" (emphasis supplied)

This provision does not use the words "accident disability" or "disability benefits," but rather provides for leave of absence with full salary, payable from the regular police department payroll.

The majority concludes that § C5.41–1 cannot provide for wages because the officer is not being remunerated for personal services. I do not agree that this conclusion is inevitable.

Payments made to an employee can be considered remuneration for past personal services even though the employee is not rendering personal services at the time he is receiving wages. *Karamanian v. Unemployment Compensation Board of Review*, 46 Pa.Commw. 163, 405 A.2d 1364

(1979); *see Industrial Commission v. Sirokman*, 134 Colo. 481, 306 P.2d 669 (1957).

Here, the referee made a factual determination that the payments the claimant received pursuant to § C5.41–1 of the City Charter were made in consideration of and as compensation for her position and services to the police department, rather than as compensation for the injury itself. Thus, merely because § C5.41–1 may allow an officer to receive his full salary without performing personal services during this time, does not necessarily mean that he is not being remunerated for personal services, and therefore, not receiving wages.

Moreover, the actions of the police department itself support the Commission's finding that the payments received by claimant were in fact wages. First, the Denver Police Department personnel officer, in response to the referee's questions, admitted that there was no formal documentation in the police department personnel files which placed claimant on disability leave, and that any officer on 365-day leave is considered to be on active duty and not disability because such an officer is given one full year to recuperate from his disability. Moreover, the payroll clerk testified that claimant was paid for all fringe benefits, including holidays, overtime, and gun and equipment allowance.

Second, and perhaps more importantly, the City withheld and reported all federal, state, and local taxes from payments made to claimant between March 28, 1981, and March 29, 1982. Disability benefits, however, are excluded from gross income, and taxes are not withheld therefrom. *See* 26 U.S.C. § 104(a)(1) (1982). The City states that it corrected this "error" when it was discovered. That belated change in the treatment of the payments does not, however, alter the fact that the City itself treated the payments as wages for a full year.

For these reasons, I would affirm the order of the Industrial Commission upholding claimant's award of unemployment compensation benefits.